United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JONATHAN MEAS,

    Plaintiff,

    v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

    Defendants.
_____/

No. C 08-4075 PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants' motion for partial summary judgment came on for hearing before this court on January 20, 2010. Plaintiff appeared by his counsel Ben Nisenbaum, and defendants appeared by their counsel Scott Weiner. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion as follows.

**BACKGROUND**

Plaintiff Jonathan Meas filed this action on August 26, 2008, alleging claims of constitutional violations, under 42 U.S.C. § 1983. Defendants are the City and County of San Francisco ("CCSF" or "the City"); San Francisco Police Chief Heather Fong, in her official capacity; and San Francisco Police Officers Jesse Serna, Gary Moriyama, Eric Valentini, and Scott Korte, in their individual and official capacities.

On Friday, August 26, 2006, at approximately 2:00 a.m., plaintiff was walking with several friends from Zebra Lounge (a San Francisco nightclub, located in the 400 block of Broadway in North Beach). The sidewalks were very crowded. Plaintiff asserts that as he and his friends moved through the crowd, he stepped one foot off the sidewalk to pass the

crowd, but then stepped back on to the sidewalk as soon as he could. He claims that he never blocked traffic and never stood in the street. His friends followed a similar path to leave the area.

Plaintiff contends that at one point, as he had stepped off the sidewalk to pass a group of people, he heard his friend Jerry Ly tell him to move, and he also heard the sound of a motor vehicle approaching him from behind. He claims that before he could look behind him, the motor vehicle struck him on the back of the leg above the knee. He asserts that the police vehicle did not warn him by using a horn or siren, or making an announcement over the loud speaker, prior to the impact.

The impact caused him to stumble, and "knocked [him] off balance."[1] He claims that the vehicle did not stop, and that he quickly turned and kicked at the rear part of the moving vehicle. As soon as he did so, he realized that the vehicle was a police car.[2] He contends that the police car pulled to a stop about 20 feet further on. The occupants of the police vehicle were Officers Serna and Moriyama. Officer Serna was driving. The officers were headed toward a fight on Broadway that had been reported on the police radio.

In his report of the incident, and in his deposition, Officer Moriyama stated that he first saw plaintiff looking directly at the patrol car, which had its lights flashing and its siren blaring, and then stepped off the curb into the street and walked backward in the direction of the patrol car. According to Officer Moriyama, the patrol car stopped and plaintiff was blocking the passenger-side door.

Officer Moriyama testified that plaintiff was standing in the way of the door, with his back to the vehicle, and did not move aside when Moriyama said, "Police, get out of the way," and opened the door directly into plaintiff. Plaintiff, on the other hand, claims that he

---

[1] Plaintiff also testified in his deposition that his knee "didn't really hurt," and that the force did not injure his knee at all.

[2] Plaintiff testified that he "would never have kicked it if it was a police car, if I would have known." He simply "thought it was some drunk just driving around." He also testified that during the motion of the kick, he realized that he had been hit by a police vehicle, and tried to pull back but was unable to do so.

heard no such warning, and also asserts that the patrol vehicle was moving when it struck him.

Officer Moriyama also testified that plaintiff did not kick the vehicle before Moriyama exited, but rather after – it was "[w]ithin a matter of, of seconds of me exiting my vehicle." He testified that plaintiff said, "What the fuck?" and kicked the vehicle ("kicked it hard"), and that he then asked plaintiff, "You think you're a tough guy?" Officer Moriyama continued walking though the crowd, and did not see anything else, including the confrontation between plaintiff and the other officers.

However, Officer Moriyama did later inspect the patrol vehicle, at which point he saw the scuff mark. He did not recall seeing a dent, and conceded that if he had seen a dent, he probably would have noted it in the police report (which he did not do).

Plaintiff claims that after exiting the police vehicle, Officer Moriyama "aggressively" approached him, and that he held up his hands to show that he was no threat to the officer. He testified in his deposition that Officer Moriyama responded by saying, "I'll show you who's a tough guy," or "You think you're a tough guy, huh?" Plaintiff claims that he told Officer Moriyama repeatedly that the police vehicle had struck him.

Officer Valentini testified in his deposition that when he first saw plaintiff, plaintiff was standing out in the street, on the area bordering the parking lane and the traffic lane next to it. The next time Officer Valentini noticed plaintiff, he saw plaintiff turn around and kick the right rear passenger door of the police car with his right foot. He saw "a scuff mark, a black scuff mark" on the door, and after the incident, he saw a "noticeable" dent in the door. Officer Valentini testified that he did not see the door of the patrol car open and strike plaintiff. He did see Officer Moriyama exit the police car after plaintiff had kicked the door.

Officer Korte testified that he saw the patrol car driving extremely close to the curb with its lights, siren, and air horn activated. He did not see the patrol car strike plaintiff. He testified that plaintiff "donkey" kicked the patrol car (facing away from the patrol car, kicked back at the car), and then turned around and took an "aggressive stance" or a "bladed stance . . . one foot was forward, one foot was back, kind of like a boxing stance." He did

3

not see anyone exit the patrol car, and could not recall whether the patrol car was stopped when plaintiff kicked the door.

Officer Korte testified that he began telling plaintiff to back away from the patrol car because there were officers in the car. He claims that plaintiff was not listening to him, and continued "taking an aggressive stance at the car." At this time, Officer Korte considered plaintiff to be under arrest for kicking the vehicle. According to Officer Korte, plaintiff continued ignoring the verbal commands, and so Officer Korte came up behind, grabbed plaintiff's shoulders, and "kind of leg swept him down to the ground."

Plaintiff's version is that after he kicked the car, another police officer approached him, and he told the officer that the patrol vehicle had struck him. Plaintiff claims he was respectful in his tone, and that he called the officer "Sir." He denies taking any sort of "fighting stance" or initiating any type of attack on the officer. He states that when yet another officer approached, he also told that officer that the patrol car had struck him. He claims that despite his attempts to explain, and the fact that he posed no threat to anyone, one or more of the officers tackled him (from behind) and threw him to the ground.

According to Officer Korte, no other officer helped him take plaintiff to the ground, and plaintiff did not hit his head on the ground. He stated that both he and plaintiff were on their sides on the ground, and plaintiff was "struggling," when the other officers attempted to detain plaintiff and gain control of his hands.

Officer Valentini testified that he observed Officer Korte put his hands on plaintiff's shoulders, and that plaintiff struggled to pull away from him. At that point, according to Officer Valentini, Officers Valentini and Serna came to Officer Korte's aid, and chased and grabbed plaintiff and took him to the ground. Officer Valentini testified that plaintiff was resisting arrest and refused to be contained, and that he punched plaintiff to the right side of his face.

Plaintiff claims that as he lay on the ground, the defendant officers repeatedly kicked and punched him in the face, head, ears, knees, and shoulder. He reiterates that he did not attack or threaten anyone, and that no reasonable person could have believed he

4

posed a threat to anyone.

Officer Korte testified that once the other officers (presumably, Officers Valentini and Serna) had gained control of plaintiff, he (Korte) stood up, and turned his back on plaintiff in order to maintain crowd control. He stated that while he had his back to plaintiff, he did not see whether the other officers struck plaintiff.

Plaintiff claims that when he was finally able to stand up, he placed his arms behind his back so the officers could not inflict further harm on him, and that the officers then handcuffed him, put him in a patrol wagon, and transported him to Central Station. He asserts that he was arrested on charges of malicious mischief, vandalism to a vehicle, resisting an officer, and battery on an officer. He received some medical attention at the jail, and was released "several hours later."

Plaintiff alleges that he then went to the emergency room at St. Francis Memorial Hospital, where he was evaluated for a potential orbital bone fracture and several other injuries. A laceration to his right eyebrow was glued closed. He asserts that he returned to St. Francis a week later, on September 1, 2006, because he had been having persistent headaches and a continuing pain in his left elbow. He was diagnosed with a fracture of his left elbow. He was working as a baggage handler at the time of the incident, and lost wages as a result of the injury.

The criminal charges were eventually dismissed several months later, following a number of court appearances.

In the original complaint, plaintiff alleged three causes of action under 42 U.S.C. § 1983: (1) a claim that the defendant officers had violated his right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments; (2) a claim that CCSF and Chief Fong had tolerated or authorized a repeated pattern and practice of police misconduct and/or civil rights violations by the defendant officers, especially Officer Serna; and (3) a claim that CCSF and Chief Fong (in her official capacity) had condoned and encouraged abuse of police authority.

On July 28, 2009, pursuant to stipulation and order, plaintiff filed the first amended

5

complaint ("FAC"), alleging as part of the first cause of action a claim for malicious prosecution (asserting that defendants subjected plaintiff to prosecution on criminal charges with malice and without probable cause to believe he had committed the crimes for which he was arrested, in violation of his Fourth and/or Fourteenth Amendment rights); and adding Officers Moriyama, Valentini, and Korte to the allegations in the first cause of action, which had previously mentioned only Officer Serna by name.

Defendants now seek summary judgment as to plaintiff's claims for false arrest and malicious prosecution, against all the defendant officers, and as to the excessive force claim against Officer Moriyama. Defendants also assert that the officers are entitled to qualified immunity as to the false arrest and malicious prosecution claims, and that Officer Moriyama is also entitled to qualified immunity as to the excessive force claim; and that plaintiff has no viable claim against CCSF.

**DISCUSSION**

A.   Legal Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence

6

1  of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the
2  moving party meets its initial burden, the opposing party must then set forth specific facts
3  showing that there is some genuine issue for trial in order to defeat the motion. See Fed.
4  R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

B.   Defendants' Motion

1.   Claim of false arrest and malicious prosecution

Defendants argue that summary judgment must be granted in favor of all defendants for the claims of false arrest and malicious prosecution, as the undisputed material facts show that the officers had probable cause to arrest plaintiff for committing vandalism and jaywalking.

A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification. See Dubner v. City and County of San Francisco, 266 F.3d 959, 965 (9th Cir. 2001). Probable cause to arrest exists when, under the totality of the circumstances known to the arresting officer, a prudent person would conclude there is a fair probability that the arrestee had committed, or was committing, a crime. Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004).

An officer is not liable for damages based on a claim of false arrest if there was probable cause to make the arrest. Pierson v. Ray, 386 U.S. 547, 555-57 (1967); see also Lassiter v. City of Bremerton, 556 F.3d 1049, 1054-55 (9th Cir. 2009) (proof of probable cause for arrest provides complete defense to claim of malicious prosecution). This is true even if the charges are later dropped or the person arrested is subsequently acquitted. Michigan v. DeFillippo, 443 U.S. 31, 36 (1979); Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995).

Defendants assert that it is undisputed that plaintiff was standing in the street, and that he kicked the police car as it passed him, noting that both the defendant officers and plaintiff testified that this is what happened. Defendants contend, therefore, that because it is undisputed that plaintiff jaywalked and kicked and damaged the police car, the police had

1  probable cause to arrest him.  Thus, defendants assert, summary judgment must be
2  granted as to both the false arrest and the malicious prosecution claims.
3       In opposition, plaintiff argues that the arrest was not supported by probable cause.
4  California Penal Code § 594 provides that "every person who maliciously . . . damages" any
5  "real or personal property not his or her own" is guilty of vandalism.  Cal. Penal Code
6  § 594(a)(2).  "Maliciously" means "an intent to do a wrongful act" or "a wish to vex, annoy,
7  or injure another person."  People v. Campbell, 23 Cal. App. 4th 1488, 1493 (1994).  Malice
8  is a state if mind that betokens a general readiness to do evil – a wanton and wilful (or
9  'reckless') disregard of the plain dangers of harm, without justification, excuse or
10 mitigation."  Id.
11      Here, plaintiff asserts, he did not possess the requisite mens rea to commit the
12 offense of vandalism.  He asserts that by his testimony, it is clear that he was shocked
13 when he was hit by the patrol vehicle, and that he assumed that whoever hit him did not
14 realize he/she had done so.  He claims that he did not yell anything at the car, or express
15 any animus, anger, wanton or willful disregard, or desire to cause harm; and did not cause
16 the patrol car much damage.  He asserts that because he kicked the vehicle only to inform
17 the driver that he had been hit, the defendant officers did not have probable cause to arrest
18 him.
19      Plaintiff also contends that the officers lacked probable cause to arrest him for
20 jaywalking, arguing that it is disputed where he was standing when the officers first saw
21 him, and it is also disputed whether he was "jaywalking."  California Vehicle Code § 21955
22 provides, "Between adjacent intersections controlled by traffic control signal devices or by
23 police officers, pedestrians shall not cross the roadway at any place except in a crosswalk."
24 Plaintiff claims that all percipient witnesses testified that the sidewalk was so crowded that
25 he and his friends had to dodge and go around people in order to move.
26      In addition, plaintiff notes that there are inconsistencies among the defendants'
27 statements regarding their observations of him.  Officer Valentini testified that he saw
28 plaintiff standing in the street, in the lane of traffic.  Officer Moriyama saw plaintiff step off

the curb into the street, but also testified that the lane next to the sidewalk is a parking lane, and not a driving lane. Officer Korte did not see plaintiff standing in the street, but also testified that the patrol car was traveling "as close to the curb as you can get." Moreover, plaintiff argues, there is absolutely no evidence that he attempted to cross the lanes of traffic, as required under Vehicle Code § 21955.

Plaintiff contends that a reasonable fact finder could determine that he was not jaywalking, but rather was navigating the crowded sidewalk, and that the defendant officers did not have probable cause to arrest him for jaywalking.

The court finds that the motion must be GRANTED, as to the charge for vandalism. Probable cause is an objective standard. U.S. v. Lopez, 482 U.S. 1067, 1072 (9th Cir. 2007). Probable cause is established by what the officers observed and what a reasonable officer would have done in that situation, Baker v. McCollan, 443 U.S. 137, 145-46 (1979); United States v. Mayo, 394 F.3d 1271, 1276 (9th Cir. 2005), not by what plaintiff's own subjective impressions were. Here, the officers saw plaintiff kick the vehicle door "hard," and Officer Valentini saw a mark on the door. Moreover, plaintiff admits to having intentionally kicked the vehicle. It is likely that a reasonable officer in this situation could have believed that plaintiff had caused damage to the police vehicle by kicking it.

Plaintiff's arguments regarding mens rea might have some relevance in a criminal trial for vandalism, but they are irrelevant to the probable cause inquiry in the present action. It is true that when specific intent is a required element of an offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred. Rodis v. City and County of San Francisco, 558 F.3d 964, 969 (9th Cir. 2009), cert. denied, __ S.Ct. __, 2010 WL 58390 (Mem) (Jan. 11, 2010). However, the California Supreme Court has held that the use of the term "malicious" in a criminal statute does not transform the offense into a specific intent crime. See People v. Atkins, 25 Cal. 4th 76, 85-86 (2001); see also People v. Williams, 102 Cal. App. 3d 1018, 1029 (1980) (words "willfully" and "maliciously" are ordinarily considered expressions of general criminal intent when used in a penal statute).

9

Also irrelevant are plaintiff's assertions that he did not kick the car very hard, or cause much damage.[3] The extent of damage to the car is not relevant to the existence of probable cause, as the officers were not required to perform an expert estimate of the damage on the spot, before deciding whether to arrest plaintiff. It was sufficient for the officers to observe plaintiff kicking the vehicle and damaging it. As for the amount of damage, that factor is relevant only in determining whether vandalism should be tried as a misdemeanor or a felony. See Cal. Pen. Code § 594(b)(1), (2).

Regarding the arrest for jaywalking, defendants contend that the only factor that matters for purposes of probable cause is the officers' observations. The officers observed plaintiff on the street, and plaintiff himself admitted he was there. However, the accounts of what happen differ somewhat. Plaintiff claims that he had one foot on the sidewalk and one foot in the street at the time the police car hit him (but also appears to concede that he and his friends were walking in the street because the sidewalk was too crowded). The officers claim, variously, that plaintiff was standing in the street in the parking lane, and that he was walking backward in the parking lane (on the edge of the traffic lane) in the direction of the patrol car.

Regardless of which version is accepted, however, there is no evidence that plaintiff was "cross[ing] the roadway at any place except in a crosswalk," which is what is prohibited by Vehicle Code § 21955. The only evidence presented is that plaintiff was either walking or standing in the street near the curb. Thus, the court finds that defendants have not established that they had probable cause to arrest plaintiff for jaywalking.

2.   Excessive force claim asserted against Officer Moriyama

Defendants argue that it is undisputed that Officer Moriyama did not detain plaintiff, and that his only physical contact with plaintiff was to use the door of the police vehicle to push plaintiff out of the way so that he (Officer Moriyama) could exit the vehicle. Defendants contend that this minor use of force was reasonable under the circumstances.

---

[3] In any event, plaintiff testified in his deposition that he did not know how hard he kicked the car or whether he caused any damage.

10

Defendants assert that there is no evidence that Officer used excessive force against plaintiff, and that, indeed, the evidence shows that after getting out of the police vehicle and having a verbal exchange with plaintiff, Officer Moriyama walked away to deal with an unrelated fight. By the time he returned, plaintiff was already under control and in handcuffs.

Defendants argue that even under plaintiff's version of the facts, there can be no viable claim of excessive force against Officer Moriyama. Plaintiff claims that the police car hit him as it drove past him. However, it is undisputed that Officer Moriyama was not driving the police car, and therefore cannot be liable for any excessive force based on the car's coming into contact with plaintiff.

In opposition, plaintiff argues that triable issues exist regarding which officers committed which act. Plaintiff contends that he and his friend Jerry Ly testified that the patrol vehicle hit plaintiff in the leg, and continued moving, which plaintiff claims caused him to "spin around and kick the vehicle to inform them he had just been hit." He notes that Officer Moriyama testified that the patrol car came to a stop, that plaintiff blocked the passenger side door, and that Officer Moriyama hit plaintiff with the door in an attempt to get him to move out of the way.

In addition, plaintiff points to differences in the officers' testimony regarding their role in the arrest of plaintiff. Officer Valentini claims that he and Officer Serna took plaintiff to the ground, while Officer Korte claims that he was responsible. In addition, plaintiff notes that there are inconsistencies between Officer Moriyama's report and deposition testimony regarding his role in the arrest and his observation of he arrest. Plaintiff and his friend Jerry Ly both testified that the beating happened so quickly that they could not tell which officer had done what, and plaintiff also testified that he did not know whether Officer Moriyama had touched him physically.

Plaintiff contends that given this "morass of accounts" of the incident, "a finder of fact will have to determine what actually happened here and whodunit." Plaintiff asserts further that a finder of fact could easily determine that Officer Moriyama's testimony is

11

unreasonable, or could easily determine that Officer Moriyama has misrepresented his involvement in the incident and that he participated in the arrest and beating of plaintiff.

The court finds that the motion must be GRANTED, as plaintiff has presented no evidence supporting his claim of excessive force against Officer Moriyama. Plaintiff testified, variously that Officer Moriyama did not touch him, or that he didn't know whether Officer Moriyama had touched him. For his part, Officer Moriyama testified that he never touched plaintiff with any part of his body.

Under plaintiff's version of events, the patrol car clipped plaintiff. However, Officer Moriyama was not driving the patrol car at the time. Thus, taking plaintiff's account as true, the court finds that Officer Moriyama did not cause the vehicle to touch plaintiff. Under Officer Moriyama's version, the only contact between plaintiff and the car was Officer Moriyama's use of the car door to push plaintiff out of the way after plaintiff blocked the door and would not move. Under this version, this minor use of force was reasonable as a matter of law. Moreover, plaintiff concedes it caused no injury to him.

In any event, under either version of events, Officer Moriyama either used no force on plaintiff, or used only minor and reasonable force.

3. Qualified immunity

Defendants contend that all the defendant officers are entitled to qualified immunity as to the false arrest and malicious prosecution claims, and that Officer Moriyama is entitled to qualified immunity as to the excessive force claim.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (citation and quotations omitted). The purpose of qualified immunity is to ensure that officers, before they are held liable for constitutional violations, have "fair notice that [their] conduct was unlawful." See Brosseau v. Haugen, 543 U.S. 194, 198 (2004). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."

Saucier v. Katz, 533 U.S. 194, 202 (2001); see Hammer v. Gross, 932 F.2d 842 (9th Cir. 1991) (granting qualified immunity where officers used excessive force but where reasonable officers could have concluded that their actions were lawful).

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See Pearson, 129 S. Ct. at 818 (overruling the sequence of Saucier's two-part test that required determination of a deprivation first and then whether such right was clearly established). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. Id. (noting that while the Saucier sequence is often appropriate and beneficial, it is no longer mandatory).

Regarding the first prong, the threshold question is whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201; see also Martin v. City of Oceanside, 360 F.3d 1078, 1082 (9th Cir. 2004). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. Saucier, 533 U.S. at 202.

The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id.; see also Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Saucier, 533 U.S. at 202.

Here, defendants argue that the officers are entitled to qualified immunity as to the false arrest and malicious prosecution claims because none of their actions violated clearly established law. Defendants contend that a reasonable officer would have believed that it

13

was legal to arrest plaintiff after observing him standing in the street and seeking him kick and damage the police vehicle.

In addition, with regard to the excessive force claim, defendants argue that the evidence is undisputed that Officer Moriyama did not violate clearly established law. Under Officer Moriyama's version of events, plaintiff was blocking the door of the police car, and Officer Moriyama told plaintiff to move before opening the door and hitting him. Under plaintiff's version, the police car clipped him as it passed, and it was being driven by Officer Serna, not Officer Moriyama. Defendants contend that under either version, Officer Moriyama is entitled to qualified immunity.

In opposition, plaintiff asserts that the evidence shows that the defendant officers, including Officer Moriyama, unreasonably instigated the violent encounter with plaintiff by hitting him without warning with the patrol car; by ignoring his pleas of surrender and the fact that he was simply attempting to notify them that he had been hit by a patrol car and was not attempting to resist arrest; and by placing him in a chokehold and severely beating him about the face and body because he reacted to being hit by the patrol car. Plaintiff asserts that viewing the facts in the light most favorable to the plaintiff, a reasonable finder of fact could determine that Officers Serna and Moriyama knew they had hit plaintiff with their car and that there was no malice attendant with his kick, and therefore knew they had no probable cause to arrest him.

Plaintiff does not dispute that kicking a car amounts to vandalism. Here, however, he disputes that his own action of kicking the police car amounted to vandalism. He does not really explain why, other than to suggest that there was no serious damage to the vehicle, and also to argue that the action cannot be considered vandalism because he did not intend to cause damage to a police vehicle. He does not specifically address the arguments as to Officer Moriyama, other than as above.

The court finds that the motion must be GRANTED. At the time of the arrest, it was not clearly established that witnessing someone intentionally kicking a police vehicle and causing damage was insufficient to create probable cause for arrest. Nor was it clearly

14

established that it was illegal for an officer to push someone out of the way with a car door if the person was physically preventing the officer from exiting the vehicle.

Plaintiff has cited no cases that would have put the officers on notice that their actions were illegal. Instead, he focuses on the use of force by officers other than Officer Moriyama in taking plaintiff into custody. Defendants have made clear, however, that they are not moving for summary judgment on the excessive force claim as to Officers Serna, Valentini, and Korte. As for the claims of false arrest and malicious prosecution, and the excessive force claim against Officer Moriyama, defendants have established that the officers are entitled to qualified immunity.

   4.   Claims against the City

Finally, defendants contend that plaintiff has no viable claim against CCSF (or against Chief Fong acting in her official capacity), because no action by the City caused the alleged violations. They assert that plaintiff has provided no evidence that any policy, custom, or usage of the City was a moving force behind the alleged constitutional violations.

In Monell v. Department of Soc. Servs., 436 U.S. 658, 690-91 (1978), the Supreme Court held that a municipality could be held liable under § 1983 if an official policy or custom directly caused the violation of an individual's constitutional rights. However, a municipality cannot be held liable simply because it employs an officer who commits a constitutional tort. Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995) (citing Monell, 436 U.S. at 690-91). Such discretionary actions of municipal employees, even when unconstitutional, generally are not chargeable to the municipality under § 1983. Gillette v. Delmore, 979 F.2d 1342, 1347 (9th Cir. 1992).

To impose liability on a local governmental entity under Section 1983, a plaintiff must establish (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992). There must

also be a "direct causal link" between the policy or custom and the injury; the plaintiff must be able to demonstrate that the injury resulted from a permanent and well-settled practice. Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006).

Such a policy may be inferred from widespread practices or "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Gillette, 979 F.2d at 1349.  A plaintiff need not show that a municipality affirmatively encouraged officers to violate the constitutional rights of citizens; rather a municipality may be liable under § 1983 for constitutional injuries inflicted by its officers if it fails to adequately guard against such injuries through training and supervision. City of Canton v. Harris, 489 U.S. 378, 388 (1989).  The need for more or different training may be so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the municipality may be said to have displayed "deliberate indifference." Id. at 390.

In opposition, plaintiff contends that as of the date of this incident, Officer Serna had been a defendant in numerous federal civil lawsuits filed in the Northern District of California.  Plaintiff's counsel represents the plaintiffs in three other lawsuits filed in this district in 2007, and attaches copies of the complaints in those three lawsuits to the Declaration of Benjamin Nisenbaum.  Plaintiff also attaches docket reports from six additional lawsuits asserting claims against Officer Serna that were filed in state court and removed to this court in between 1997 and 2008.  Finally, he notes that Officer Serna is named as a defendant in two other lawsuits pending in this court (filed in 2007 and 2008).

Plaintiff asserts that defendants have not cited evidence of any action taken with regard to any of the allegations of misconduct against Officer Serna in any of these lawsuits – including whether the allegations were investigated or whether Officer Serna was disciplined.  Plaintiffs claim that the only inference that can be drawn is that the City took no action whatsoever in the face of numerous prior allegations of misconduct against Officer Serna, thereby leaving him undisciplined, on the street, in a high-risk environment, in the night club district of North Beach, free to continue to be abusive to the citizenry, including to plaintiff.

16

Plaintiff argues that CCSF is liable pursuant to Monell, under the theory that the City failed to take action to investigate Officer Serna and remove him from the street. Plaintiff contends that there is no evidence that CCSF has ever disciplined "these" officers (although the only officer plaintiff mentions is Officer Serna), or taken any steps to protect the public from "them." Plaintiff asserts that given the number of complaints[4] lodged against "these officers" (again, the focus is only on Officer Serna), the logical conclusion is that the City has made only a cursory attempt at investigating "their" use of police authority.

Plaintiff claims that a reasonable fact finder could conclude that the City has a policy permitting abusive, explosive, excessive-force using, demeaning behavior by its officers. Plaintiff argues that CCSF cannot claim that it was unaware of its officers' penchant for abusing the public, as some of those abuses have resulted in other litigation. He claims that the conduct of which he complains here is typical of the abuses that "these officers" dole out, and that the City condones by failing to discipline or reprimand them in any way.

The court finds that the motion must be GRANTED. First, plaintiff has provided no admissible evidence to support his claim of municipal liability. His evidence consists of printouts of various complaints and docket sheets relating to lawsuits filed against Officer Serna, as well as a discovery order directing that certain citizen complaints against Officer Serna be produced in another case. Plaintiff seems to be arguing that, based solely on the fact that there have been so many lawsuits filed in which Officer Serna is named as a defendant, and so many citizen complaints filed against him, the City must necessarily have a policy of authorizing (or at least condoning) Officer Serna's actions, which amounts to a police of deliberate indifference to the rights of the citizens of San Francisco.

Plaintiff has not provided copies of the actual citizen complaints, and does not

---

[4] Plaintiff is referring to complaints filed with the Office of Citizen Complaints ("OCC") and complaints contained in the files of the San Francisco Police Department's Management Control Division ("MCD"). He does not attach copies of any actual OCC or MCD complaints. Instead, he attaches a copy of a July 22, 2008 order issued by Judge Larson in Oliver v. CCSF, C-07-2460 JL, and directing (following in camera review) that the City produce certain OCC and MCD files. The order lists the files by number only and states that they pertain to complaints made against Officer Serna.

describe their allegations or outcome. Moreover, he provides no admissible evidence of what allegedly happened in the incidents that gave rise to the complaints, or explain why the incidents are relevant to Officer Serna's alleged conduct in this case. The complaints are inadmissible hearsay as to the truth of any such reports, and are insufficient by themselves to raise a triable issue of fact regarding unconstitutional practices.

Plaintiff has provided no evidence showing that the complaints were ignored or otherwise mishandled, or that the City failed to take any corrective measures, such as additional training or supervision. To survive summary judgment based on a claim of prior complaints of misconduct, plaintiff is required to show that the complaints were meritorious, and that the Police Department failed entirely to investigate the complaints. Here, he has done neither.

Indeed, in response to the court's questions at the hearing on the present motion, plaintiff's counsel stated that he had not taken a Rule 30(b)(6) deposition of CCSF, or propounded interrogatories specifically asking what if any action was taken by the City regarding the complaints against Officer Serna.

The fact that various lawsuits or complaints have been filed against Officer Serna and the fact that another judge in another case ordered the production of certain citizen complaints is not enough to establish a triable issue with regard to the existence of a municipal policy that amounts to deliberate indifference. Plaintiff cannot meet his burden by pointing to past complaints and asking the court to assume that they were handled inappropriately.

Moreover, plaintiff's unsubstantiated allegations regarding the City's purported failure to discipline a single officer, as opposed to a systematic policy, cannot support a claim of municipal liability. A Monell claim will fail where the plaintiff provides evidence as to only a single officer, rather than evidence regarding department-wide inadequacy in training. See Blakenhorn v. City of Orange, 485 F.3d 463, 484-85 (9th Cir. 2007) (evidence of failure to train a single officer is insufficient to establish a municipality's deliberate policy).

## CONCLUSION

In accordance with the foregoing, the court GRANTS defendants' motion for partial summary judgment. As plaintiff has failed to provide evidence sufficient to create a triable issue as to Monell liability, the claims against Chief Fong (sued in her official capacity only) must also be dismissed. The claims remaining for trial are the excessive force claims against Officers Serna, Valentini, and Korte.

By separate order, the court refers this matter for a mandatory settlement conference.

**IT IS SO ORDERED.**

Dated: January 28, 2010

PHYLLIS J. HAMILTON
United States District Judge